UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SLC LAND AND CATTLE, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| *versus* § | | CIVIL ACTION H-06-745 |
| § | | |
| § | | |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, § | | |
| § | | |
| Defendants. § | | |

# Opinion on Summary Judgment

1.  *Introduction.*

    A rice farmer in South Texas has sued the Department of Agriculture to compel it to reallocate the allowed acres of rice for the farm he bought. The rice allotment was devised in the contract, but he wants something more favorable to him. He objects to the administrative process. The government prevails.

2.  *Background.*

    SLC Land and Cattle owns a large rice farm on the coastal plain of Texas in Chambers County. Steve L. Clark is its owner. On December 11, 2003, the Clines sold a farm of 2,114.7 acres to the Fitzgeralds. The Fitzgeralds immediately sold 1,227.3 of those acres to Clark. The Fitzgeralds kept 887.4 acres.

    In their contract, Clark and the Fitzgeralds agreed that Clark would get 158 "rice-base" acres and the Fitzgeralds would get 924.5. Because rice is a crop that is controlled by the national government, the Department of Agriculture evaluates a farm to ascertain how much of it is suitable for rice. Next, it essentially divides that area into three and allows rice to be grown on that one-third of the potential acreage for rice. This compels

crop rotation and reduces the crop size to keep the price of rice high. It also makes the possession of an administrative allocation of base acres valuable.

The Farm Services Agency – part of the Department of Agriculture – reconstituted the base acres as the contract specified. The method was determined by a committee of other farmers in the county of the land, Clark's peers. Farmers of the county elect the members.

On February 5, 2004, the Agency sent Clark a form with the allocation. In error, the form indicated that the "default method" was used to allocate the base acres; instead the Agency had used the allocation specified in the contract. Had the default method been applied, the rice-base would have been split pro-rata by gross acreage. This would have given Clark roughly four times more than he agreed to under the contract. He liked the mistake.

Clark visited the Agency's office on February 11, 2004, and complained about errors in the form and the allocation. The clerical errors were corrected, and Clark was told that the allocation of base acres would not be changed.

On March 5, 2004 – thirty days after Clark received the form – his opportunity to appeal expired. On November 15, 2004, Clark appealed the allocation. The Agency denied the appeal because it was filed more than eight months after the thirty-day limit.

Clark responded to the rejection of his appeal by suing the Fitzgeralds for fraud in state court in Chambers County. He claimed that the Fitzgeralds prepared the contract and forged his signature. The jury found for the Fitzgeralds.

Clark now sues the Agency. Originally, he sued the Agency for fraud and governmental irregularity, but he has since abandoned the fraud claim. He says that his visit to the Agency on February 5, 2004, should be considered as a formal appeal. He says that the regulations demand that the base acres be allocated by the default method.

3.  *Appeal.*

Clark claims that: (a) his visit to the Agency amounts to an appeal; and (b) the errors in the form warrant acceptance of an untimely appeal.

Clark's oral complaint to the Agency did not constitute an appeal. An appeal is a *written* request by a participant asking a higher authority to review a decision. 7 C.F.R. § 780.1 (2004) (emphasis added). Clark did not submit a written request to the Agency on his visit. The employee to whom he complained was not a "higher authority." Badgering an agent is not seeking review by a higher level of administration.

Clark fails to show that his appeal should be heard by the government despite its lateness. The law allows the Agency to accept an untimely appeal if, in the judgment of the Agency, circumstances warrant it. 7 C.F.R. § 780.8(b) (2004). The Agency did not think his unexplained delay of over one-half a year implicated equity. Courts may substitute their judgment for that of the Agency only when its acts arbitrarily. Clark has articulated no reason that, if true, would have formed the basis for the Agency's allowing a late appeal.

The only thing that Clark suggests is that he believes he deserves an exception because the form indicated that the default method was used. He says that he did not discover the error until November 15, 2004. That cannot be true. He had to have realized that the default method was not used when he got the letter showing an allocation different from the gross acres held by each party. Clark knew how many acres he had bought and how many base acres he had agreed to acquire. Regardless of the box checked on the form, the actual allocation – the number of base acres by his name – was the critical fact. He knew about the allocation when he visited the Agency to complain about it. Still, when told that the allocation would stand, Clark did not appeal until more than eight months later. A farmer is bound like city folks to tend to his business, and that includes reading the government forms and his contract.

Clark also believes an exception is warranted because he received no indication from the Agency that a written appeal must be filed. First, this is probably not true since customarily letters from the Farm Service Agency say that determinations must be appealed in writing. Second, ignorance of the law is no excuse.

Clark's unexcused failure to appeal ends this case, but his other claims are addressed contingently.

4.    *Base Allocation*.

Clark argues that the contract method is not available because Fitzgerald owned the farm land for fewer than three years before he sold it to Clark. While the land sale did pass through Fitzgerald in a nearly instantaneous Cline-Fitzgerald-Clark deal, the allocation was a direct transfer from Cline to Fitzgerald and Clark. The parties agree that the Clines owned the land for more than a decade.

Even if he were right to insist on direct transfer, he misreads the regulation:

> Where the part of the farm . . . is being transferred was owned for . . . [fewer] than 3 years, the designation . . . method shall not be available . . . unless the county committee determines that the primary purpose of the ownership transfer was other than to retain or to sell . . . bases.

See 7 C.F.R. § 718.206(3)(ii)(2004). The contract method is available when the primary purpose of the land transfer was genuinely to sell acres, not bases. This is what fits the facts here, and it is apparently what happened.

5.    *Procedure*.

At a pre-trial conference, counsel and the court throughly discussed the claims, defenses, and, most of all, the facts. The court suggested that the government answer orally and move for summary judgment orally with Clark responding orally too, except that the lawyers would talk, and Clark would have until 4:00 p.m. two days later to supplement his response on one point. That point was whether the national government is not bound by the underlying judgment adverse to Clark in the state-court action against the Fitzgeralds.

Clark's counsel consented before the court, government's counsel, one law clerk, and three interns to address all the issues on an oral motion and response. Then, Clark promptly (a) amended the complaint, (b) objected to the absence of twenty days to respond, and (c) filed a written response to the Agency's oral motion for summary judgment.

In his objection, Clark indicated nothing that he could have added if he had had eighteen more days. By abandoning the fraud pleading, Clark obviated a decision on issue preclusion.

6. *Conclusion.*

Clark had an opportunity to appeal. He did not. He will take nothing from the Agency or Agriculture Department.

Signed July 10, 2006, at Houston, Texas.

Lynn N. Hughes
United States District Judge